TOWN OF GREENSBOROUGH *v.* TOWN OF UNDERHILL.

If M. marries H. and after cohabitation, H. the husband, absconds, and is absent nearly two years unheard from, and the wife then marries B. the second marriage is not to be presumed illegal and void, there being no evidence tending to prove that the first husband was living, at the time of the second marriage.

THIS was an appeal from an order of removal of certain paupers, and was tried in the county court by a jury, on the issue, whether they were duly or unduly removed.

The paupers, whose settlement came in question, were Margaret, the alleged wife of one Burdick, her child by said Burdick, and another child of hers, which was born before her alleged intermarriage with said Burdick. It was conceded, for the pupposes of the trial, that said Burdick was legally settled in the town of Underhill; and the sole question was, whether the marriage between said Burdick and his alleged wife, aforesaid, was a legal and valid marriage? Said marriage was proved to have taken place, on or about the 30th day of May, 1836.

The defendants proved that on, or about, the 25th day of June, A. D. 1834, said woman was married in due form of law to one James Hyland, a foreigner, with whom she lived

and cohabited for two or three weeks thereafter, when said Hyland absconded, and had not since been heard of.

ORLEANS.
August.
1839.

Greensboro'
v.
Underhill.

The plaintiffs insisted that, under such circumstances, the death of said Hyland, previous to said second marriage, was to be legally presumed. But in this they were overruled by the court. They then offered to prove that, at the time of said first marriage, said Hyland was confined in jail, at Irasburgh, awaiting his trial before the county court, on an indictment for subornation of perjury ; that said woman was a material and necessary witness in support of said prosecution, and that said marriage was had for the purpose of preventing her from testifying against him ; which purpose was thereby accomplished.

This evidence was objected to by the defendants, and rejected by the court ; whereupon a verdict and judgment passed in favor of the defendants. To which decisions of the court the plaintiffs excepted.

*Willard & Poland*, for plaintiffs.

Did the county court err in ruling in favor of the presumption that Hyland was living at the time of the marriage between the woman and Burdick ?

We contend that they did err, and that the legality of the latter marriage should have been sustained, against any evidence short of positive proof, that Hyland was living at the time of such marriage, for the reason that all presumptions of law are in favor of the legality of such proceedings and against fraud and crime, and the life of Hyland cannot be presumed without presuming the marriage to have been illegal, and the parties guilty of a crime. *Williams* v. *E. I. Co.*, 3 East's R. 76. *The King* v. *Hawkins*, 10 do. 211.

And it is further contended, that the usual presumption of life is not allowed to preponderate over the presumption of legality and innocence, and is not allowed in any case to be applied, when the application will tend to fix a presumption of guilt, infamy or disgrace, upon the person or persons against whom the application is to be made. *The King* v. *Inhabitant of Twyning*, 2 B. & A. 386.

*Cooper & Redfield and Maeck & Smalley*, for defendant, contended that the marriage of James Hyland to the pauper, Margaret, was a legal marriage; that no presumption that Hyland was dead, could be made, short of an absence of seven

years, and that the marriage of Burdick to the wife of Hyland, having been solemnized within less than two years after Hyland absconded, was void ; that the county court were correct in excluding the testimony offered by the plaintiffs to invalidate the first marriage, for, if such testimony could be admitted, courts could make marriages valid or void, by enquiring into the *motives* of the contracting parties. This can never be done.   If the parties were capable of contracting and did contract, understandingly, and were married by one having authority, the marriage is valid, and cannot be held void because one or both of the parties had improper motives in making the contract.   In support of the decision of the county court, they cited, Stat. p. 381. do. 360.   2 Kent's Com. 79.   do 77.   1 Bl. Com. 433.   Stat. 258, 363. 2 Kent's Com. 80.   Harg. & Butler's Coke Litt. note 1, § 104, p. 79, chap. 4, Lib. 2.   Story's Conf. of Laws, p. 101, § 109 ; p. 103,   § 112-13, p. 104.   8 Pick. R. 423.   1 do. 506.   Story's Conf. of Laws, § 122, 123, 124, and authorities there cited.   2 Stark. Ev. 665, note, n. 680.   1 Aik. R. 174.   2 Vt. R. 151.

The opinion of the court was delivered by

BENNETT, J.—The paupers, whose settlement is drawn in question, are the alleged wife of one Burdick, her child, by Burdick, and also another child of hers, born before her alleged marriage with him.   It is admitted in the case that the legal settlement of Burdick is in Underhill, and the only question of law presented in the case is this.   Is the intermarriage of Burdick with the pauper, in 1836, rendered illegal and void from the fact of her intermarriage with Hyland in 1834, who, after a short cohabitation with her, absconded and has not since been heard of ?   To render the second marriage illegal and void, we must presume the continuance of the life of Hyland down to the time of the second marriage ; and though, as a general principle, we are to presume the continuance of life for the space of seven years, still, when this presumption is brought into conflict with other presumptions in law, it may be made to yield to them.   We are in all cases to presume against the commission of crime, and in favour of innocence ; and the result will be, if we

suffer this presumption to yield to the other, we, by presumption alone, pronounce the second marriage illegal and void, and the parties guilty of a heinous crime. We should all agree, very readily, that the parties ought not to be convicted of the crime of adultery in consequence of their cohabitation after their intermarriage, upon the presumption that the first husband was living at the time of the second marriage, and we see no good reason why the principle should not be the same in this case. In the case of *Rex* v. *Twyning*, 2 B. & A. 386, the woman married again within the space of twelve months, after her husband had left the country ; and yet the presumption of innocence was held to proponderate over the usual presumption of the continuance of life, and this, too, in a case involving a question of settlement.

Our statute, which makes seven years absence, unheard from, a good cause of divorce, is relied upon by the plaintiff; but we do not see that it can have any effect.

That statute is founded upon the common law presumption of death, upon an absence, unheard from, for that term of time, and was intended to furnish a means of relief, in cases where a person wished to contract a second marriage, against any possible embarrassment from the return of the party to the first marriage. It can have no effect to control the presumptions of law in a case like the present. On the whole, then, though our first impressions might have been to the contrary, we come to the conclusion that there is error in the proceedings of the county court, and the judgment below is reversed and a new trial granted.