SHARP vs. JOHNSON.

Possession of land, to enable the party to rely upon the statute of limitations must be continuous and unbroken—an interruption of possession destroys all benefit from the previous holding, and the resumption of possession is the commencement of a new term of adverse holding.

The statement of a party since deceased, that he was present at the solemnization of a marriage, is not admissible as evidence in proof of that fact.

The admission of illegal testimony will be no ground for disturbing a verdict otherwise supported by testimony to which there is no objection.

An outstanding title to bar recovery in ejectment, must be shown to be a subsisting title at the time of its exhibition, and the assertion of such title may be rebutted by proof on the trial.

In cases of conflicting presumptions, that which assumes innocence of a criminal offence will be adopted.

Where a bill of exceptions does not profess to embrace the entire testimony the court may presume evidence to have been given, in support of the verdict.

*Appeal from Crawford Circuit Court.*

Hon. FELIX I. BATSON, Circuit Judge.

S. F. CLARK and PIKE, for the appellant.

GARLAND & RANDOLPH, for appellee.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Johnson brought an action of ejectment in the Circuit Court of Crawford county, against Sharp, for the east half of the north east quarter of section twenty four, and the south east quarter of section thirteen, in township nine north, of range thirty two west; in which, upon its second trial, he obtained judgment for the two pieces of land, to reverse which Sharp prosecutes this appeal.

The lands in question seem to have been located under a donation claim of John B. Powell, and a patent issued to him for the north east quarter of section twenty four, and the south east quarter of section thirteen, in township nine north of range thirty two west, on the 7th of July 1840.

Powell died in 1832, and the plaintiff claims title by deed from Polly Ann Powell and William B. Powell as the heirs of John B. Powell.

The case will be treated, so far as its pleadings are concerned, as if it depended upon the general issue, as such is conceded to be the effect of the several issues in the case.

If Polly Ann Powell and William B. Powell were the only legitimate children of John B. Powell, and their ages were as given in the testimony of Mary Powell, the title of the plaintiff is a good *prima facie* title; upon which, until impeached or met by some legal defence, he was entitled to a recovery in his action of ejectment.

But it was contended on the trial, and is now maintained for the reversal of the judgment, that the illegitimacy of the plaintiff's grantors is shown by the invalidity of the marriage of their mother with John B. Powell; that they are not in fact the

children of Powell; or that Powell's children by a former wife were equally with them entitled to shares in the lands in controversy; and that the action should be defeated by the statute of limitations.

It is also urged here that the court below erred in its instructions to the jury, given on the part of the plaintiff; and in refusing the first, seventh and tenth instructions asked for by the defendant, and in overruling his motion for a new trial.

We are happily relieved from all consideration of the testimony which burdens the record concerning the birth, age and parentage of the two children, Polly Ann and William B. Powell, except to ascertain that it is not all against the finding of the jury, and amid such conflict of evidence as the transcript shows, it requires but a superficial examination to conclude with safety that a verdict rendered for either party would not be unsupported by proof.

And although the counsel for the appellant seem to have satisfied themselves that the proof adduced by their witnesses so far outweighs the testimony of Mary Powell, and of the other witnesses of the plaintiff, as to extinguish it; thus leaving the verdict unfounded upon any evidence, and against it all, and so liable and requisite to be set aside by this court, we cannot look upon the matter in that way. To us, the testimony seems to have been merely incongruous and conflicting; and what witnesses knew more of the facts which they related, were more credible from any or from all causes, and which gave the more consistent or truthful accounts; or to whichever side the whole evidence should have caused the scales to incline, is not for us to say. That has been done by the jury, the proper tribunal for ascertaining facts; and whatever we might say upon the subjects mentioned and committed to the jury; or whatever we might think they could have found therefrom, we must hold it to have been established by proof, that John B. Powell and Polly Mason were married, that the children, Polly Ann and William B.

6

Powell, were begotten and born of them in lawful wedlock, and that their deed was executed to the plaintiff within five years after they became of age.

Upon the trial, the defendant, after proving that Edward Cunningham was in possession of a field of about forty acres, on the section thirteen that is involved in this suit, continuously from the spring of 1840 to 1848, and from 1850 to 1852, offered to prove that Cunningham, while in possession of the field, claimed it as his own; and stated to various persons, on numerous occasions, that the land belonged to him; which the court refused to be given in evidence.

The acts committed, the assertions made, by one taking possession of land, are admissible to show the intent and character of his possession; and adverse possession is to be proven by acts that visibly and plainly not only imply, but proclaim the possession of the actor to be his own. But it was entirely too general to offer to prove what Cunningham stated to various persons, on numerous occasions, that the land belonged to him. The defendant should have been allowed to have showed that Cunningham had claimed the land as his own, but the court was not required to admit this to be done in the indefinite way proposed, or to admit it to be done at all, unless upon offers to prove specific facts, that transpired at such times as could only be declaratory of the character of his present and past possession, without regard to its conflict with any future or probable claim.

And what Cunningham may have said in 1848 and 1849, when he was out of possession, could not be taken as evidence. *May vs. Jones*, 4 *Litt.* 24.

Mr. Greenleaf leaves it in doubt how far the declarations of a claimant are admissible to show the character of his possession, except they are in disparagement of his title; 1 *Greenleaf Ev. sec.* 109.

In accordance with this doubt, is the settled law in Connecticut declared to be, that the declarations of a party may be received that are made against his interest, but not to establish his own title or claim; *Smith vs. Martin*, 17 *Conn.* 401.

In *Miles vs. Miles*, 8 *Watts & Serg*. 136, the declarations of Thomas Miles were admitted upon the ground that they were co-temporaneous with the acts of taking possession, and of clearing and building on the land.

All of the numerous authorities which we have examined on the delicate subject of receiving a man's declarations in evidence for himself, to show the intention with which he acts, concur in holding that they must be confined to the time of the act, must be closely restricted to showing the intention of the act; 1 *Cow. & Hill's Notes* 218, 220, 221; *Smith vs. Morrow*, 7 *Mon*. 236; *West vs. Price*, 2 *J. J. M*. 383; *Brubaker vs. Poage*, 1 *Mon*. 126.

In accordance with the authorities, this court has held that declarations explanatory of the character of the possession, made by persons having personal property, and under circumstances that free them from being made for future use, may be received as evidence; *Yarbrough vs. Arnold*, 20 *Arks*. 597. Such declarations are to be viewed with reference to the attendant facts, and in subordination to other general rules of the admission of testimony, as, for instance, to its being relevant to the matter under enquiry, and certain or likely to have an effect upon the case, considering its position as affected by other evidence; *Per*. ABBOTT C. J. *from* 1 *Cow. & Hill's Notes*, 221.

And in any event, the question raised by the exclusion of the offered testimony seems unimportant, for the character of Cunningham's possession is immaterial, unless it had lasted long enough to ripen into a title by adverse possession. That could not be as against the infants Polly Ann and William B. Powell, until five years after they had attained full age, which could not be, according to the testimony upon which the jury based their verdict, till 1855 to 1857, while this suit was begun in 1852.

For the same reason, it seems to be needless to follow up the enquiry suggested by counsel, as to the statute of limitations beginning to run from the issuance of the patent, or location of the donation claim, unless there were proof to show that the entry was made in John B. Powell's life time, so that the

statute would begin to run against him, and continue against his infant heirs.

While upon the subjects of limitations and adverse possession, it may be well to consider the evidence concerning the continuity of Cunningham's possession, and the legal consequences that may result therefrom, rather than to defer such consideration till the instructions of the court shall be reviewed.

The evidence is, that Cunningham, under whose representatives the defendant claims, had possession of an inclosed field on the south east quarter of section thirteen, township nine north, range thirty two west, one of the pieces of land sued for, from the spring of 1840, by himself or tenants cultivating it and keeping up the fence about it, till 1848, when he left the place, remaining absent from it and not holding it by cultivation, or occupancy of himself, or others, in the years 1848 and 1849.

During this interval of two years, Cunningham must be taken to have been out of the possession of the field, and of the land; for the evidence is satisfactory that he did nothing to keep it in repair, in use, or in possession. The fence had fallen down, as the witness, who testified upon this subject, says, that when Cunningham returned to the place in 1850 he rebuilt the fence, and that the fence was kept up about it from 1840 to 1852, except during the years 1848 and 1849.

The place was then abandoned by Cunningham, was vacant for two years, and whatever the legal effect of such vacancy, and of the abandonment of Cunningham may be, it is to be applied to him, as he knew and adopted the consequences of his act, or will be held by the law to have so done.

And it is well settled that the possession upon which the statute of limitations will operate for the holder must be an unbroken, continuous possession; that if there be an interruption of holding, the term of adverse possession is closed; and upon a resumption of possession, a new point is made from which limitations will again begin to run. *Angell on Lim. ch. XXXI, sec.* 84; *Potts vs. Gilbert,* 3 *Wash. C. C. R.* 478; *Doe vs. Campbell,* 10 *John.* 477; *Pederick vs. Searle,* 5 *Serg. & Rawle*

240; *Andrews vs. Mulford*, 1 *Haywood* 320; *Doe vs. Ridley*, 1 *N. C. Rep.* 282; *May vs. Jones*, 4 *Litt.* 23.

It is only then a possession from 1850, that Cunningham, or his representatives, or the defendant their tenant, can date from as the beginning of a defence from being in possession; which of course is no defence to a suit begun in 1852.

And this results from the fact of abandonment, which is evidence to the world of the intention of him who leaves his occupancy. What secret wish, or anticipation, he may indulge of returning, and re-asserting his yielded claim, none but himself can know. Or, if he should assert his claim to be a continuing one in his absence, that would not make it any better for him, for although, in aid of possession, the law will presume it to be well founded, and will respect as rights, interests that have become ancient, a claim of possession without the fact agreeing therewith, is not to be recognized by law as productive of right, or as capable of having connected with it any interest.

In the fourth, fifth, and twelfth instructions given on motion of the plaintiff, the facts tending to prove the abandonment of the possession are not taken from the consideration of the jury; and they were correctly instructed that, if an abandonment was found from the evidence, the effect was to make Cunningham's possession previous thereto, unavailable in defence of the suit.

It was for the jury to ascertain if there was an abandonment, from the facts before them. Then, if they so found, they were instructed in its legal consequences; and this was right. The abandonment being established, the law affixes a meaning, attaches a result thereto. And to find an abandonment the attention of the jury might well be directed to such visible and notorious acts as constitute possession, and the want thereof, and not to the intention of Cunningham in leaving his field or land.

The court committed no error in giving the instructions referred to, upon this subject.

That the appellee was allowed to introduce illegal evidence

to the jury is one of the grounds for a new trial urged before the court below; and it is also assigned here as cause for the reversal of the judgment.

The admission of the deeds of Hiram Powell and Jackson Collier, and the statement of the witness Moore, of what Wealty told him about being present at the marriage of John B. Powell and Polly Mason, are specifications of such illegal evidence.

Without doubt the appellee's objection to the statement of Wealty ought to have been sustained. That Wealty was dead, and had told Moore that he was present at the marriage referred to, did not make the statement evidence. But the marriage was well proven by legal testimony, and the verdict ought not to be disturbed for the illegal testimony upon the same matter. *Owen vs. Jones*, 14 *Ark*. 504.

After the plaintiff had given in evidence his title, and the corroborating evidence, he was met by proof that John B. Powell, whose title he was seeking to be made available to him by the pending suit, left two other children than those from whom he had derived his title. Viewing this proof in connection with the other facts in the case, it could only be introduced to show that the plaintiff had no title, if the persons he claimed under were illegitimate, or, if they were legitimate, to reduce his claim to one-half of the lands.

In the one case the right of Hiram and Maria Powell would be a paramount title to that of the plaintiff, and of course to the possessory claim of the defendant.

In that sense the evidence was introduced to show an outstanding title, and the plaintiff had a right to show its relinquishment, or by any legal evidence to show that it was not a subsisting, operative title.

And if it should be that the claims of Hiram and Maria Powell were co-ordinate with his own, he certainly had a right, by rebutting proof, to show that he was entitled to the whole instead of one-half of the lands claimed by his deed. And if he could rebut the claim brought to light by the defence, though the means of rebuttal showed a title from Hiram and Maria

Powell, he would recover, not on their claim; it only being used to show that there was no outstanding title paramount to that upon which his suit began and still rested.

It may be well questioned whether proof of the parentage and existence of Hiram and Maria Powell were evidence of any outstanding title; for that is to be shown by a title, an active, subsisting, asserted title; and not by a right that may have been transferred, released, unasserted, barred by limitation or lapse of time. *Foster vs. Joice,* 3 *Wash. C. C. R.* 501; *Jackson vs. Hudson,* 3 *Johs.* 386; *Greenleaf vs. Berth,* 6 *Pet.* 312; *Peck vs. Carmichael,* 9 *Yerg.* 329.

Besides, in this case Cunningham, under whose representatives the defendant claimed, was a mere intruder; his possession was unaccompanied by any assertion of paper title, the defendant even objected to the plaintiff connecting Cunningham's possession with a voidable deed: and as an intruder he was not entitled to any benefit from an outstanding title, or from any claim that would depreciate the plaintiff's title. *Jackson vs. Harden,* 4 *Jhs.* 211.

In *Perryman vs. Callison,* 1 *Tenn. Rep.* 516, the court decided that if a possessor could show a better title than the plaintiff, he should be allowed to rebut it by showing that the supposed better title was void; or vested in the plaintiff himself, by purchase during the pendency of the suit.

There was no proof that Hiram and Maria Powell asserted any claim; it was probably barred by limitations, and would not have injured the plaintiff if unrebutted and unnoticed; the defendant could not, as a trespasser, be benefited by it, nor injured by its rebuttal or extinguishment, or by an insufficient attempt by the plaintiff to accomplish such an end.

The defendant then has no cause to complain of the introduction of the deeds of Hiram Powell and Jackson Collier, they being brought into the case to overthrow evidence brought in by the defendant, from which he was entitled to no benefit.

What we hold upon this subject is in accordance with the eleventh instruction given to the jury at the instance of the

defendant; while the thirteenth instruction of the plaintiff was erroneous against himself, but of which the defendant cannot complain.

The first and second instructions of the plaintiff are lengthy expositions of the issues, and of what evidence would sustain them, needlessly long, and unnecessary at all; not being illegal, we should not disturb the verdict for fear the jury might have been confused by them, any more than we should censure the defendant for creating the occasion for the instructions, by presenting, by many issues, what he could as well have presented, and had the benefit of under the general issue alone.

Such instructions as the third, sixth, eighth and ninth of the plaintiff we do not approve, and for the reason assigned against them of being mere legal propositions disconnected with the facts of the case.

Yet, although subject to this formal objection, we know the facts and the occasion upon which they were given, and in the minds of the jury they must have been connected with the testimony upon which they were founded.

The third instruction is a disquisition upon the seizins known to the law; the sixth shows the influence of possession, as affording presumption of title, in the different stages of a trial in ejectment; the eighth and ninth are that marriage is presumed to be lawful, its issue legitimate; and that these presumptions are to be overcome only by direct and positive proof.

The law of the instructions is not objectionable, the facts of the case call for its application; and we leave it to the good sense and good taste to frame their instructions.

Although, to make the seventh instruction strict law, it should have supposed the statute not to have begun to run against John B. Powell in his life time, yet, in the absence of proof to show that it did, or could so begin to run, the instruction had no tendency to mislead the jury.

No objection is perceivable to the eleventh instruction of the plaintiff, except to the use of the word " conclusive," and the instruction being a repetition of the elementary principle,

that testimony apparently conflicting shall be reconciled if it can be; followed by the inference, that if it cannot be reconciled, the verdict shall be according to that testimony which is supported by legal presumption, unless the preponderance of opposite proof is of a "conclusive character."

Even if we should have been better pleased with the instruction, had some other word than "conclusive" been used to show the kind of proof necessary in the given case; yet, if we mistake not, the examination arising from giving the plaintiff's tenth instruction, and of refusing the tenth of the defendant, will show that no error prejudicial to the defendant was committed by giving the instruction.

The first and seventh instructions asked for by the defendant, were properly refused, for declaring the law to be that ten years adverse possession would defeat the plaintiff's suit, without any saving clause for the condition of infants, which the facts of the case required to be inserted, to make the instruction law for the case.

The tenth instruction moved for by the plaintiff is as follows:

" That (if) the proof should satisfy them beyond a doubt, that the patentee had previously been married to the woman he cohabited with, while a soldier in the U. S. army, at Ft. Smith, they are bound to presume that she died before the marriage with Polly Mason, unless it be proved that she was living at the time of the marriage with Polly Mason, by positive testimony."

And the tenth instruction asked by the defendant is this:

" That if they believe from the evidence that the wife of the said John B. Powell was alive within five years next before the date of the alleged marriage with the said Polly Mason or Roberts, the law presumes that she is still alive, unless it were shown in evidence to the contrary."

The court gave the former of these instructions and refused the latter.

By the common law, a person proven to be alive was held to be so till his death was shown; though if he had not been heard

of for seven years, the law would presume him to be dead. ] *Greenlf. Ev. sec.* 41; *Hopewell vs. DePenna,* 2 *Camp.* 113; *Cuthbert vs. Punier,* 2 *Phillips Rep.* 200.

By our statute, a person once resident in the State, and absent from it for five years, is presumed to be dead, unless proven to be alive within that time. *Ch.* 53, *sec.* 1 *Gould's Digest.* And every person, till the contrary is proven, is presumed to be innocent of a supposable or of an imputed crime. These presumptions may sometimes clash with each other; and then it is for the law to declare which is to prevail.

In this case, the opposing counsel were each insisting on the benefit of a presumption in their favor; the plaintiff's counsel, on the presumption of John B. Powell's innocence of the crime of bigamy; while the defendant's counsel wished an application of the presumption of life alone, and the question was, which is the stronger presumption?

The court answered the question in favor of innocence, and it did right. 1 *Greenlf. Ev. sec.* 35.

This precise question was before the Kings Bench, in 1819, and was decided as the court below ruled. Per BAYLOR, J: "It is not necessary for the court, in this case, to impugn the authority of the cases which have been cited, nor to vary the ordinary presumption which exists both in civil and criminal cases; for this is a case of conflicting presumptions, and the question is, which is to prevail. The law presumes the continuation of life, but it also presumes against the commission of crimes, and that even in civil cases until the contrary be proved. *   *   *   *   *   * The cases cited only show, when the presumption of life ceases, even when there is no conflicting presumption. The facts of this case are, that there is a marriage of the pauper with Frances Burns, which is prima facie valid, but the year before that took place, she was the wife of Richard Winter, and if he was alive at the time of the second marriage, it was illegal, she was guilty of bigamy. But are we to presume that Winter was then alive? If the pauper had been indicted for bigamy, it would

clearly not be sufficient. In that case Winter must have been alive at the time of the second marriage. It is contended that his death ought to have been proved, but the answer is, that the presumption of law is, that he was not alive when the consequence of his being so is, that another person has committed a criminal act." "Per BEST, J: "They had a right to presume that the pauper had not committed a crime, and if so, the second marriage would be valid, unless proof had been given of the first husband's being then alive. The cases cited are very distinguishable, they only decide that seven years after a person has been last heard of, you are in all cases to presume his death. But they do not show, that where conflicting presumptions exist, you may not presume the death at an earlier period. Now, those conflicting presumptions exist here, and I think the sessions were warranted in presuming the death of the first husband, on the ground that they would not presume that the woman had committed bigamy." *The King vs. Inhabitants of Twyning*, 2 *B. & Ald.* 386.

To the same point and equally decisive are *Greensboro' vs. Underhill*, 12 *Verm. Rep.* 604; *Clayton vs. Wardell*, 4 *Comst.* 237, 240.

An eminent writer also says: " A charge of an act of immorality, or of disobedience to a positive law, will not be received unless supported by direct evidence. Circumstances showing probability merely, are, in such cases, not enough; the fact averred must be conclusively proved." *Mathews Presumptive Ev.* 28.

And in support of a plea of justification of libel charging bigamy, the same strictness of proof is required, as to convict for bigamy. *Willmett vs. Harmer*, 8 *Carr. & Payne* 695.

We have treated separately the several objections to the action of the court below, but if our decision had not been the same on them singly, taken collectively, as they were presented on the motion for new trial, our judgment on the whole record would be to sustain the judgment of the Circuit Court, being satisfied therewith.

In answer to the objection that the verdict and judgment are

for the two tracts of land sued for, while the evidence confines the possession of the defendant and of Cunningham to an enclosure upon one of the tracts, without examining the law involved in the point, we need only say, that the bill of exceptions does not show that all the evidencce is contained in it, and we may thence presume that the verdict is not without evidence. Judgment affirmed.