# Wile's Estate. Rump's Appeal.

*Evidence—Conflicting presumptions of marriage and legitimacy—Policy of law.*

A valid marriage once established is presumed to continue until the contrary is shown or until a different presumption is raised. Of necessity resort must often be had to presumptive evidence, and it is not too much to say that the burden of proof is often placed and shifted, not only because of the convenience of proving or disproving a fact in issue, but also upon grounds of public policy.

The presumption of the continuance of a valid marriage will yield after long desertion of a wife by her first husband and after a second marriage by the first husband and by the wife, in favor of the presumption of legitimacy of the wife's child by her second marriage; and the burden of proving the continuing validity of the first marriage is imposed by the policy of law upon those contesting the legitimacy of the child of the wife by the second marriage even to the extent of compelling the production of proof that the first marriage had not been terminated by divorce during the long years of desertion by the husband during which he had sojourned in many states, had married again and had declared that his marriage with the mother of the child in question was void.

*Legitimacy of children—Burden and quality of proof—Policy of law.*

The presumption and charity of the law are in favor of the legitimacy of a child, and those who wish to bastardize him must make out the fact by clear and irrefragable proof.  The presumption of law is not lightly repelled; it is not to be lightly broken in upon nor shaken by a mere balance of probabilities; the evidence for repelling it must be strong, satisfactory and conclusive; such presumption can only be negatived by disproving every reasonable probability.

Argued Oct. 13, 1897.   Appeal, No. 82, Oct. T., 1897, by Almira E. Rump, Julia McKnight and Michael Shetzline from decree of O. C. Phila. Co., Oct. T., 1881, No. 168, in the matter of the estate of George Wile, deceased.   Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ.   Affirmed.

Adjudication of trustees' account.    Before FERGUSON, auditing judge.

It appears from the record and evidence that the question arose at the audit of the estate of George Wile upon the filing of the account of testamentary trustees.

The guardian of John Shetzline, Jr., the grandson of the testator, claimed as distributee under the limitations during the continuation of a trust to issue of testator's children, FERGUSON, auditing judge, finding that the minor's mother had been married to Benjamin Andrews prior to her marriage to the child's father, and that her first husband was living at the time of her second marriage, holding that the marriage was void and that the child being illegitimate could not share as issue of his father in the distribution.   This finding he reaffirmed on a rehearing which had been granted " to enable the guardian to prove her claim."   Exceptions on behalf of the guardian of John Shetzline, Jr., were filed alleging error, (2) In placing the burden of proof on said minor; (5) In finding that there was no evidence that Benjamin F. Andrews and Elizabeth Andrews were divorced; (7) In not finding that the said minor was entitled to all presumptions existing at the time of his birth; (10, 11) In not awarding the fund to the guardian of said minor.

The court in banc sustained the above exceptions in an opinion by PENROSE, J., in which the material facts of the case fully appear, and which is as follows:

That the parents of the child, whose right as one of the distributees is now denied, were regularly married in 1884, a year or more before his birth; that, in the relation thus established, they lived happily until the husband's death in 1891; and that during the entire period of seven years or more his father, brother and sisters were on terms of intimacy and friendship with his family, with no suggestion that his marriage was not a valid one, are facts clearly established by the evidence, and, practically, not in dispute. As grandchild he was entitled, while he lived, to one twentieth of the income of the estate of the testator; and the share which he had received was continued, for more than two years, to his child's guardian, under the limitation during the continuance of the trust to "issue."

The boy, a helpless cripple, now about ten years old, seems to have been the object of especial tenderness on the part of his father, who, on his death-bed, expressed great anxiety as to his future welfare, fearing, as he said, "lest some wrong might at any time be done to his little crippled boy." His mind was relieved by the assurance of a sister that this should never be; but it is this sister who now alleges that her brother's marriage was invalid, and seeks on this ground, not only to exclude his boy from further participation in the grandfather's estate, but to blight his entire life by stigmatizing him as illegitimate— though her share of what he would thus be deprived of, during a period of two years, is shown by the adjudication to be but $60.62. The auditing judge, in commenting on this has well said: "We have often illustrated in this court some of the best features of human nature. We have also some of the worst. This is one of the worst." Avarice, however, is apt to yield to just such temptations; and, as we know, thirty pieces of silver (just half the amount sought for here) were sufficient to induce the grossest act of perfidy recorded in the history of the human race.

It appears that in 1866 the boy's mother was married to a man who deserted her in 1872, after having treated her with great brutality and after repeatedly declaring that she was not his wife. He disappeared from the city, and she was told that he was dead; but it was not until 1884, after an interval nearly twice as long as that required to create a presumption of death, that she contracted a second marriage—never, in the mean-

while, having heard of, or had any communication with him. But he was not dead; and a year or two after the birth of the child whose legitimacy is now attacked, he appeared again in Philadelphia, thus putting an end, of course, to the presumption of death arising from his long continued absence.

If the case rested here, there could be no escape from the conclusion that the second marriage of the wife, notwithstanding the good faith with which it was contracted, was void ab initio. But it was shown that two or three years after his desertion, the supposed first husband married another woman, with whom, as his wife, he has ever since lived and cohabited; and as he would otherwise be guilty of bigamy, it is to be presumed either that he spoke truthfully when he asserted that the marriage of 1866 was, for some undisclosed reason, void, or that after his desertion and before his remarriage, he obtained a divorce. A divorce so procured, even if service were not effected upon the opposite party, would be voidable only, not void; and after the remarriage of both parties both would be bound by it (see Richardson's Estate, 132 Pa. 292; Pennoyer v. Neff, 95 U. S. 714; Bishop on Marriage and Divorce, secs. 163, 199). It is stated in Best on Evidence, sec. 346, that "it is a presumptio juris, running through the whole law of England, that no person shall, in the absence of criminative evidence, be supposed to have committed any violation of the criminal law, . . . or to have committed any act subjecting him to any species of punishment, . . . . and this holds in all proceedings for whatever purpose originated, and whether the guilt of the party comes in question directly or collaterally." And "so strong is this presumption," it is said by Professor Greenleaf (Evidence, sec. 35), "that even where the guilt can be established only by proving a negative, the negative must, in most cases, be proved by the party alleging the guilt; though the general rule of law devolves the burden of proof on the party holding the affirmative." Illustrations of these principles are furnished by Rex v. The Inhabitants of Twyning, 2 B. & Ald. 386; Case v. Case, 17 Cal. 598; West v. The State, 1 Wis. 186; Williams v. The East India Company, 3 East, 193, etc.

But where the question not only involves the commission of crime by third persons, but relates also to the legitimacy of one born in wedlock, and especially where the legitimacy was not

questioned until after the death of the parent through whom·
property is claimed, presumptions of this character are greatly
strengthened. "The presumption and charity of the law," as
was said by the Supreme Court of Illinois in Orthwein v. Thomas,
127 Ill. 554, are in favor of the legitimacy of the child, "and
those who wish to bastardize him must make out the fact by
clear and irrefragable proof. The presumption of law is not
lightly repelled; it is not to be lightly broken in upon or
shaken by a mere balance of probabilities; the evidence for re-
pelling it must be strong, satisfactory and conclusive." And in
Piers v. Piers, 2 H. L. Cas. 331, it is said that the presumption
"can only be negatived by disproving every reasonable possibil-
ity." See also DeThoren v. The Attorney General, L. R. 1
App. Cas. 686.

The precise question has been decided by the court of last
resort in at least two states of the Union (Blanchard v. Lam-
bert, 43 Iowa, 328; Carroll v. Carroll, 20 Texas, 731); and as
the decisions are fully justified by the principles to which we
have referred, we have no hesitation in following them.

The second, fifth, seventh, tenth and eleventh exceptions to
the readjudication are sustained, and the distribution awarded
accordingly.

Counsel will prepare the necessary decree.

*Errors assigned* among others were (1) In sustaining appel-
lee's exceptions; (5) In finding that there was a presumption ·
of a divorce of the child's mother from her former husband;
(6) In giving said presumption of divorce the full force of an ·
established fact; (9) In finding that John Shetzline, Jr. was a
legitimate son of John Shetzline, Sr.

*Frederick J. Knaus*, for appellants.—If a woman has a law-
ful husband alive and undivorced at the time of her second
marriage, no matter how long he may be absent or unheard of,
the second marriage is void: Clark's Appeal, 173 Pa. 451.
Kenley v. Kenley, 2 Yeates, 207; Thomas v. Thomas, 124 Pa.
646.

It was error in the court in banc not to have sent the matter
back to the auditing judge to permit the hearing to be com-
pleted by permitting the appellants to submit evidence in support

of their side of the case. The proceeding was analogous to a nonsuit in a common law action, and no one will pretend that when a nonsuit is taken off the defendant has not the right to a venire de novo, to have his side heard. This point was raised in Wharton v. Williamson, 13 Pa. 273.

*Albert D. Wilson*, for appellee.—The court in banc inferred an additional fact, namely, a divorce by Benjamin Andrews from his wife. "Legal presumptions lie thickly strewn in the pathway of evidence. A state of facts being proved the law makes its own inference and from it pronounces that another fact must have existed:" Kisterback's Appeal, 51 Pa. 483. When presumptions are in conflict that prevails which favors innocence. It is presumed every one has conformed to the law.

The findings of fact by the orphans' court will not be disturbed: Coulston's Estate, 161 Pa. 151; McConnell's Appeal, 97 Pa. 31.

OPINION BY RICE, P. J., February 19, 1898:

When the existence of a valid marriage relation is once established by proof it is to be presumed, ordinarily, that it continues to exist until the contrary is shown or until a different presumption is raised. Where this presumption comes in conflict with the presumption of the innocence of either of the parties in marrying a second time and of the legitimacy of the offspring of such marriage, the question arises which shall yield. If one of the parties has been absent from his or her domicil unheard of for seven years there is no difficulty. In such a case death is to be presumed: Francis v. Francis, 180 Pa. 644; but this presumption is subject to be rebutted, as it was in the present case, by proof that he was alive at the time of the second marriage: Thomas v. Thomas, 124 Pa. 646. But proof that he was alive is not positive proof that he was still the lawful husband of the woman to whom he was first married. That fact rests alone on the presumption of the continuance of a relation which might have been dissolved by divorce as well as by death. Upon that bare presumption the appellants' whole case rests. In other words, they say, that Benjamin Andrews was married to Elizabeth in 1866, and was alive when she married John Shetzline in 1884; therefore, because of the presumed

continuance of a proved relation, the latter marriage was void, the child born of it was a bastard, and was incapable of inheriting from or through his father. Possibly, if there were nothing further in the case, this presumption would neutralize the prima facie presumption in favor of the validity of the marriage directly in issue; although that has been denied in more than one case. But be that as it may, the proposition, that the former presumption must always prevail, in the absence of full proof of the dissolution of the first marriage, is not sustained by principle or the weight of authority. The circumstances of the particular case, although not in themselves amounting to full proof of the fact, may so aid the presumption in favor of innocence as to warrant the court in presuming the dissolution of the first marriage by death and even by divorce; or to put the proposition in a preferable form, in holding, that the burden of proving that it was not dissolved rests on him who asserts the illegitimacy of the offspring of the second marriage. Of the well considered cases which may be cited in support of this proposition—some of them go still further—are Blanchard v. Lambert, 43 Iowa, 228; Re Edwards, 58 Iowa, 431; Carroll v. Carroll, 20 Tex. 731; Coal Run Coal Co. v. Jones, 127 Ill. 379; Schmisseur v. Beatrie, 147 Ill. 310; Boulden v. McIntire, 119 Ind. 574; Hull v. Rawls, 27 Miss. 471; Klein v. Laudman, 29 Mo. 259; Hunter v. Hunter, 31 L. R. A. 411, and cases there cited. See also Rex v. Twyning, 2 B. & Ald. 386; Kelly v. Drew, 94 Mass. 107; Greensboro v. Underhill, 12 Vt. 604; Spears v. Burton, 31 Miss. 548; Wilkie v. Collins, 48 Miss. 496; Johnson v. Johnson, 114 Ill. 611; Orthwein v. Thomas, 127 Ill. 554; Sharp v. Johnson, 22 Ark. 79. Our own cases recognize the general principle, although none of them decides the precise question before us. In Breiden v. Paff, 12 S. & R. 430, the question was as to the validity of a deed made by A and B, his wife. It was proved that she had been married to D who was dead more than thirty years, and one of the plaintiff's witnesses stated that she had had three husbands before marrying A. It was contended that a conveyance to which her legitimate husband was not a party, would not pass her estate, but Judge GIBSON said: "I am of opinion, the court were right in leaving the jury to presume that the persons to whom she had been married previously to her marriage with

Paff were dead. In an old transaction like this, the fact of the second marriage is, of itself, some evidence of the death of the former husband. There are sometimes cases where it is unavoidably necessary to decide on the existence of facts, without a particle of evidence on either side, and if a decision in a particular way would implicate a party to the transaction in the commission of a crime, or any offense against good morals, it ought to be avoided; for the law will not gratuitously impute crime to any one, the presumption being in favor of innocence till guilt appear." In Senser v. Bower, 1 P. & W. 450, the question was as to the legitimacy of the plaintiff. There was sufficient evidence of reputation and cohabitation to show that her father and mother were married in fact. "But," said Chief Justice GIBSON, "there is said to be the same evidence of a precedent marriage of the mother with another man who was alive at her second marriage; and hence a supposed dilemma. But the proof being equal, the presumption is in favor of innocence; and so far is this carried in the case of conflicting presumptions, that the one in favor of innocence shall prevail: Starkie on Ev. 749–753. It must be admitted that this principle is not immediately applicable here, inasmuch as there is no conflicting evidence, and the facts supposed to result are consistent with each other; but it establishes that the same proof that is sufficient to raise a presumption of innocence may be inadequate to a presumption of guilt. To say the least, then, the jury were not bound to draw the same conclusion of marriage from the same evidence, without regard to consequences; and to have instructed them that they were, would have been an error. On the contrary, they were bound to make every intendment in favor of the plaintiff's legitimacy, which was not necessarily excluded by the proof." So in Pickens's Estate, Obenstein's Appeal, 163 Pa. 14, Mr. Justice FELL said, "but if conflicting presumptions arose, that in favor of innocence and legitimacy would prevail."

The declaration of Benjamin Andrews that the mother of the appellee was not his wife; his marriage to another woman with whom he lived openly as his wife, and who was so recognized by his daughter; the terms of intimacy and friendship which existed between the mother of the appellee and her second husband's family during all the period of their marriage; their

recognition of her as his lawful wife, and of the appellee as his legitimate child, emphasized by a solemn promise made by one of the appellants to the father upon his death bed; the lapse of time, during all which no question appears to have been raised by any one as to the validity of either of the second marriages, are facts which cannot be overlooked in determining such an issue as is presented here. They do not, of themselves, prove the dissolution of the first marriage, it is true, but they do show a probability of it, which, taken in connection with the presumption of innocence and legitimacy, neutralized the presumption that Benjamin Andrews was the lawful husband of Elizabeth at the time of her marriage with John Shetzline, and left the fact essential to the appellants' claim not proven.

In answer to the question, how were they to prove that be was not divorced, it may be asked how was this appellee to prove that he was? If he must prove it by the record it would be scarcely less difficult for him to ascertain the state and the court in which the decree was made, than for the appellants to prove the negative; and, it is to be borne in mind that even where guilt can be established only by proving a negative, the negative must in most cases be proved by the party alleging the guilt, unless the fact be one peculiarly within the knowledge of the other party. But the opinion of the court below is so full and satisfactory upon this point, and indeed upon all the questions, that, it seems to me, we might well have adopted it without further discussion.

Since writing the foregoing we have examined the unreported case of Van Dyke v. Barger (No. 83, May T. 1878, Middle District of Supreme Court) called to our attention by our Brother BEAVER who was of counsel. Upon a hasty examination it seemed to sustain the appellant's contention, but upon a more careful consideration of its facts we think it fairly distinguish-. able from the present case in a very important particular. There, the question was as to the dissolution of the marriage tie between Alexander Van Dyke and Elizabeth McCleary.. The evidence showed, that shortly after their separation both. married a second time, and after the death of the second woman Alexander Van Dyke married a third time. But both parties continued to reside in Pennsylvania, and their domicils were well known. If either party had obtained a divorce it would

have been an easy matter to prove it by a judicial or legislative record. It was of such a case that the Supreme Court, in distinguishing it from Senser v. Bower, *supra*, said : " It is evident no such presumption arises here — and it is very different from presuming a divorce — which should only be by some legislative or judicial proceeding easily susceptible of proof, if it had existed." The same cannot be said of the present case. For over ten years the domicil of Benjamin Andrews was unknown. The mother of the appellee supposed him to be dead, and was warranted in so presuming when she married a second time. The evidence showed that his second marriage was contracted in Kentucky, and when his daughter visited him he was domiciled in Illinois. The appellee furnished the best evidence of which the case in its nature was susceptible, taking into consideration all the circumstances. To require him to prove a divorce by the record of some court would be to compel him to trace Benjamin Andrews through all his wanderings and to search the records of all the courts of all the states where he may have been domiciled. This were to require an impossibility, as much so as to prove the death of a person who has been unheard of for seven years. The latter may be presumed, and is often presumed, in favor of innocence ; why not the former? Of necessity, resort must often be had to presumptive evidence, and it is not too much to say that the burden of proof is often placed, and shifted, not only because of the convenience of proving or disproving a fact in issue, but also upon grounds of public policy. " Society rests upon marriage, the law favors it, and when a man and woman have contracted marriage in due form, the law will require clear proof to remove the presumption that the contract is legal and valid." The presumption of the continuity of an established relation, or state, or condition, whether of marriage or any other, is a convenient rule of evidence, and, it is true, most frequently accords with the actual facts. But it is not an absolute and inflexible rule, and could not be so declared without breaking down other presumptions equally regarded in the law and based on as strong natural probability. We think it was so far weakened in the present case by the proved facts and the natural probabilities that grew out of them, that the court was justified in holding, that it was incumbent on the appellants to prove that Benjamin

Andrews was the lawful husband of the appellee's mother at the time of her marriage to John Shetzline, and that they had failed to prove that fact.

There is nothing in the record of the proceedings to show that the auditing judge did not receive all the evidence that the appellants offered. After a regular marriage of the parents of the appellee was shown, the burden of proving that the parties had not legal capacity to marry, and that the issue was illegitimate, rested on the appellants. If they saw fit to go to final hearing without introducing or offering all the evidence they had upon that question, they took the risk, and having lost were not entitled to another opportunity to make out a stronger case.

The decree is affirmed at the cost of the appellants.

BEAVER, J., dissents.