## Beegle's Estate.

*Husband and wife—Marriage—Evidence of adultery—Divorce.*

Where a married woman under the mistaken belief that her husband had procured a divorce from her, goes through a form of marriage with another man, lives with him and has children by him, and when her first husband obtains a divorce, continues to live with her second husband and has other children, and she is held out as his wife, introduced to his relatives as such and joins in conveyances with him, the court will hold that she was his legal wife at the time of his death, and entitled to share in his estate.

The Act of March 13, 1815, P. L. 150, which forbids a woman who has been divorced on the ground of adultery to remarry again during the life of her divorced husband, will not apply to a case where a woman marries again, but the record of the divorce proceedings shows no adulterous conduct with her second husband prior to the divorce, although such conduct is alleged in proceedings over the distribution of the second husband's estate.

Argued May 4, 1916. Appeal, No. 58, April T., 1916, by Malinda Beegle, from decree of O. C. Allegheny Co., May T., 1915, No. 166, sustaining exceptions to adjudi-

180, (1916).]                    Adjudication.

cation in Estate of Calvin J. Beegle, deceased. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

The auditing judge, MILLER, filed the following adjudication:

The alleged first wife of the decedent and their children, file exceptions and contest the right of the alleged second wife of decedent, to share in the distribution of his estate.

At the audit a petition was presented by the first wife, praying to set aside the widow's exemption awarded to the second wife, on the ground of illegality in marriage, and the reason given for the delay in the application. This was permitted to be filed; conceding that the proper place to attack the exemption claimed by the second wife is at the number and term where her petition was presented, it was and is apparent that the facts upon which the relative rights of the parties should be determined, were necessarily to be presented here. As a result of this adjudication either of the parties can take such further action at the exemption proceedings as they may see fit.

The right of the first wife and her children to file exceptions here is denied, on the ground that she never was the legal wife of the decedent, and that the children are illegitimate.

The following are the facts: The first wife Malinda Beegle, was originally married to one Charles Efline, in Blair County, this State; he is still living, and a resident of Pennsylvania. This marriage was in 1874 or 1875; he left her in 1880. She testified that in 1881, she was notified of a divorce proceeding brought by Efline against her; that in 1884, Beegle, the decedent, told her that the divorce between her and Efline was all right; thereupon in September of that year she and Beegle were married by a justice of the peace by the name of Black, in Altoona, Pennsylvania; the certificate of mar-

riage was given to Beegle, and was in their joint posses-
sion for a number of years; but was lost in the Johns-
town flood; Black is dead.

Following this alleged marriage, she and Beegle lived
and cohabited together, keeping house in Johnstown
until 1900, when they removed to Lorain, Ohio; while
in Johnstown, seven children were born, four of whom
are still living, the youngest being seventeen, the oldest
twenty-seven; two of these are daughters and are mar-
ried.

From Lorain, Ohio, they moved to Braddock, Penn-
sylvania, where they lived without any apparent diffi-
culty until the fall of 1905, when, as shown by proceed-
ings at No. 139 September Term, 1905, in the Court of
Quarter Sessions of Allegheny County, she brought a
charge of desertion and nonsupport against him, which
by decree of court was disposed of as follows: "At re-
quest of prosecutor case dismissed at cost of defendant."
During a portion of this time they also lived in Somer-
set County, where Beegle bought a farm.

Apparently the first divorce testified to by her was
not granted, nor is there any evidence of any proceeding
in connection therewith, for it appears from an exempli-
fied copy of the records of Blair County at No. 53 June
Term, 1894, on the charge of adultery, the court of Blair
County, on April 17, 1895, granted a divorce between
Charles Efline and Malinda Efline, with the right in
each party "to marry again within the provisions of the
State of Pennsylvania, in like manner as if they had
never been married, and further, it is ordered, adjudged
and decreed that Charles Efline pay all the costs of this
proceeding."

In 1909, by Articles of Separation, dated July 28th,
between Beegle and his wife, Malinda, therein called
his common-law wife, after reciting that differences had
arisen between them, the agreement provides for the
separate residence of each of the parties, without moles-
tation of the other, the children to remain with the wife,

180, (1916).]                    Adjudication.

with the right reserved in each, to keep their own earnings, and without liability for support or maintenance, each to have the same rights as though they were single, in the transaction of business. Neither by express words, or implication, does either release any statutory right of curtesy, dower or other provisions under the intestate law in the estate of the other.

During all the period from the time of the first alleged marriage, and particularly from the date of the divorce decree in 1894, until 1909, Beegle and his wife lived and cohabited together; their large family of children were acknowledged openly; were cared for and supported by the joint earnings of the parents; sent to school, and they were known in the community where they lived as husband and wife. During this period Beegle became possessed of real estate on one, if not two occasions, and in selling the same, his wife joined in the deeds thereof as his wife, and acknowledged the same in due form of law. At times during this period they were temporarily separated, it being alleged that Beegle was addicted to the use of liquor, and was cruel to his wife and children.

After the separation agreement in 1909, the decedent, Beegle, entered into a marriage with a second wife; the marriage certificate shows that on the 5th of November, 1910, Beegle, described as a bachelor, his occupation a blacksmith, was married to Mabel Florence Arms, described as a divorcee, in the City of Cumberland, State of Maryland, by Wm. M. Tinker, a minister of the gospel.

Before this marriage, pending the acquaintance and apparent intimacy between Beegle and Mabel Florence Arms, the latter knew of his family relations with the first wife, of their living together, and of the existence of this family of children; she was informed by both the first wife and one of the children, of this family relationship, and was asked, or warned, not to continue her relationship with the husband and father.

It is strongly urged that the exceptant never was the

legal wife of Beegle; that the first marriage, even if there was a ceremony, was invalid, because Efline was living; that Mrs. Beegle was Beegle's paramour; that the relation was meretricious; that the decree of divorce in 1894, even if followed by a legal marriage, would have been ineffectual, in that she never could marry Beegle her paramour, and that granted there was cohabitation and repute of marriage from 1894 to 1909, it could not constitute a valid marriage relationship with Beegle, on account of their original alleged meretricious relation. It may be conceded that the first marriage ceremony, if any existed, was invalid; but the proof of her adultery with Beegle, arises only by inference. The record of the divorce proceedings furnished is only the final decree. While it states in the caption that the ground of divorce is adultery, there is nothing in the record as offered, showing that the adulterous relation was proven with Beegle. The decree of the court of Blair County, gives the parties the right to marry again; true it says, "within the provisions of the State of Pennsylvania," but in the absence of evidence that the adultery was with Beegle, and in the absence of a provision in the decree prohibiting marriage between the first wife and Beegle in express terms, it cannot be said that the court must imply from the peculiar record of the decree in divorce, that she was prohibited from afterwards marrying Beegle.

If then, in the absence of proof of adultery with Beegle, and in the absence of a provision against her ever marrying Beegle, why is not this relationship of cohabitation, support, open repute of marriage, birth of a large number of children, recognition of her by him as his wife in the acknowledgment of deeds made by him, as well as in the articles of separation, abundant evidence of a legal valid common-law marriage? Granted that there could neither be a marriage by a ceremony, or a common-law marriage prior to the decree of divorce in 1894, on what ground can it be urged that the subsequent

facts, evidencing a common-law marriage are not suffi-
cient to establish the relationship, and legitimatize the
birth of these children?

Counsel for the accountant, the second Mrs. Beegle,
replies on Hunt's App., 86 Pa. 294, and Grimm's Est.,
131 Pa. 199. The doctrine of those cases, under the facts
therein found, are not in conflict, especially in the line
of later decisions, with the conclusions, that under the
facts in this case, this relationship and marriage was
valid and legal. It will be noticed that in Hunt's App.,
the interval during which a marriage might have become
lawful was two months; in Grimm's Estate, supra, it
was one week. In the case at bar it was fourteen years.
Here, as in Thewlis' Est., 217 Pa. 307, a marriage, even
though invalid at the time it was made, followed with
the birth of children, repute of marriage and cohab-
itation, was held valid after the obstacle to the marriage
had been removed by death. Judge PENROSE in Thewlis'
Estate, supra, says: "The presumption against crime
and still more the presumption in favor of legitimacy
forbids" a result which convicts the parties of bigamy
and bastardizes issue. Positive, affirmative proof must
overcome such presumption, especially in view of the
great lapse of time. Every intendment and every infer-
ence will be made in favor of innocence and legitimacy;
Best on Evidence, Section 346. "So strong is this pre-
sumption," it is said in 1 Greenleaf's Evidence, Section
35, "that even when the guilt can only be established
by proving a negative, the negative must in such cases
be proved by the party alleging the guilt, though the
general rule of law devolves the burden of proof on the
party holding the affirmative." Here, as in Thewlis'
Estate, supra, the doctrine of Hunt's Appeal, supra,
and Grimm's Estate, supra, cannot be extended to a
case where the parties continued to live together as hus-
band and wife after the complete removal of the only
obstacle in the way of a valid marriage. To the same
effect is Staiger's Est., 7 D. R. 351.

The accountant further relies on Stull's Est., 183 Pa. 625. While certain expressions therein seem to sustain the contention, yet it is manifest upon a close examination of the opinion that it is based on the grounds that the parties being residents of Pennsylvania went into another jurisdiction to evade the statute. Here there was no secrecy or subterfuge in the relationship between Malinda Beegle and the decedent. Mistakenly Mrs. Beegle depended upon the decedent's statement that she was divorced and could lawfully marry him; while this does not legalize the relationship prior to the divorce in 1894, it, with the open and notorious repute, cohabitation and family relationship sustained between Beegle and his wife coupled with the acknowledgment and support of his children, and of the other facts in this case, do permit an inference to be drawn that Beegle, up until 1909, did consider himself the legal husband of this woman and the father of their legitimate children.

Admitted that this is a case of hardship for either of the parties, must not the presumption of innocence be in favor of the mother and the children, under the facts? Certainly the second wife entered into her venture of marriage with Beegle with her eyes open; she lived in the same town, where she knew he had a reputed wife and children, and acknowledged them as such; she knew from them herself what their relationships were to Beegle, and they implored her not to enmesh herself with him.

As to the exceptions filed relating principally to the purchase of a horse by Beegle and presenting the same to his then affianced wife, the evidence is not sufficient to sustain the exception. The same is true as to the other exceptions filed.

Even though the second wife, under this adjudication, was not legally entitled to the grant of letters, nothing in the account filed indicates any other acts done by her than those essential for the administration of the estate,

and for the purposes of this case, they need not be disturbed.; to the extent, however, of the items admitted by her of moneys collected and not accounted for, she must be surcharged, as also must she be surcharged with the credit claimed for money paid to her on account of the widow's exemption.   The decree of distribution should award this balance, one-third to the first wife, the remainder to the four children.

Exceptions to the adjudication were sustained and the balance was awarded to Mabel F. Beegle.

*Error assigned* was in sustaining exceptions to adjudication.

*Ralph J. Brown,* for appellant.

*George Weil,* of *Weil & Remington,* for appellee.

OPINION BY HENDERSON, J., July 18, 1916:

That the appellant was married to Calvin J. Beegle under the belief that her husband, Charles Efline, had obtained a divorce from her might fairly be concluded from the evidence.   She and Beegle appeared before a magistrate in Altoona, where they were living, and were openly and publicly married and thereafter continued to live together in that community.   Several children were born to them and it is sufficiently shown that Beegle recognized the appellant as his wife, and introduced her to his relatives and friends as such.   While a valid marriage relation could not be established between them before Efline obtained a divorce the circumstances of the case tend to prove that it was not the appellant's intention to enter into an illegitimate relation with Beegle. After Efline obtained his divorce in April, 1895, Beegle and the appellant continued to live together as husband and wife; they were so reputed in the places where they lived; other children were born to them; they were visited by Beegle's kindred; the appellant was introduced

among his friends as his wife; she united with him in the conveyance of real estate as his wife and this relation was maintained until July, 1909, when they entered into articles of separation as husband and wife and agreed to live separate and apart from each other.  There was, therefore, such long continued cohabitation and reputation as is sufficient to establish a marriage: Richard v. Brehm, 73 Pa. 140; Thewlis' Est., 217 Pa. 307; Wile's Est., 6 Pa. Superior Ct. 435.  The relationship and conduct of the parties and the birth of their children after the Efline divorce were sufficient to overcome the presumption arising from their former illegal relation, every presumption being in favor of innocence and the legitimacy of children.  The presumption of an illicit relation under such circumstances gives way to the superior presumption in favor of compliance with the requirements of the law of morality and of common decency: 1 Greenleaf's Ev. Sec. 41; Thewlis' Estate, supra.  An acknowledged marriage with parentage of children ought not to be overthrown except upon clear and conclusive evidence.  The policy of the State demands that this relation should not be lightly discredited and the issue made illegitimate: Vincent's App., 60 Pa. 228.

The presumption of the continuance of the former relation of the appellant and Beegle is so strongly rebutted by the facts established by uncontradicted evidence and by the natural probability arising from them that the burden was on the appellee to show that the appellant was not the lawful wife of the decedent.

It is urged, however, that Efline obtained his divorce from the appellant on the ground of adultery with Beegle and that the 9th Section of the Act of March 13, 1815, forbids that she become the wife of the person with whom she has been guilty of the crime of adultery during the life of Efline.  It was found by the auditing judge that there is nothing in the record as offered showing that adulterous relation was proven between the appellant and Beegle in the divorce proceeding.  The decree in

180, (1916).]          Opinion of the Court.

that case was offered in evidence but it is not there ad-
judged that the respondent was guilty of adultery with
Beegle nor was there any restraint on her remarriage
imposed by the decree. Our examination of the evidence
leads us to the same conclusion reached by the auditing
judge. The burden was on the accountant to show that
the parties had no legal capacity to marry and that there-
fore the appellant was not the wife of the decedent. If
the allegation relied on was susceptible of proof the ap-
pellee should have produced the evidence. We are not
warranted in subjecting the appellant to the prohibition
of the statute without satisfactory evidence of the find-
ing of the specific fact by the court which granted the
divorce.

The decree is reversed and the account as stated by the
auditing judge is confirmed.