GREENWOOD et al. v. FRICK, Immigrant Inspector, et al.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1916.)

No. 2779.

1. ALIENS ⊂⇒49—DEPORTATION—PUBLIC CHARGES.

In a proceeding for the deportation of an alien woman and her minor son, where there was uncertainty of continuing support of the son by the father alone, who was a resident of the United States, the son must be ordered deported, as one likely to become a public charge, if the mother be deported.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. ⊂⇒49.]

2. ALIENS ⊂⇒46—DEATH ⊂⇒2(2)—PRESUMPTIONS—REMARRIAGE.

Where a female subject of Great Britain, who had not heard from her husband for over 2 years, and believed him to be dead, contracted a second marriage and thereafter had not heard of the first husband for over 11 years, there was a presumption of his death and the legality of the second marriage, and her conduct cannot be said to involve moral turpitude, warranting her deportation from the United States on that ground.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. ⊂⇒46; Death, Cent. Dig. § 3; Dec. Dig. ⊂⇒2(2).]

3. ALIENS ⊂⇒49—DEPORTATION—PUBLIC CHARGES.

Where an alien woman entered the United States for an immoral purpose, making her subject to possible prosecution and imprisonment at public expense, or naturally tending to a life not supported by honest work, she may be deported on the ground that she is likely to become a public charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 107; Dec. Dig. ⊂⇒49.]

4. ALIENS ⊂⇒54—DEPORTATION—PROCEEDINGS.

Where, after a hearing on the charge whether she was entering the United States for an immoral purpose, an alien woman was ordered admitted by the Secretary of Labor, the Secretary on a subsequent hearing may order her deportation on the testimony at the first hearing, provided it was properly brought into the second deportation proceedings.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊂⇒54.]

5. ALIENS ⊂⇒54—DEPORTATION PROCEEDINGS—TESTIMONY.

An alien woman and her son, who returned to this country, were held for examination as persons likely to become public charges and suspected of entering for immoral purposes. At the hearing the woman's husband appeared and promised to provide for her support and that of her child. On such showing an order of exclusion was set aside and she was admitted. Thereafter the woman acquired lucrative employment in the United States, and with the aid of her husband furnished a suitable home for her minor child, but separated from her husband, intending to procure a divorce on the ground that the first marriage might have been illegal, and to subsequently remarry. Thereafter deportation proceedings were instituted, and the woman was ordered deported on the ground that she had committed a crime or misdemeanor involving moral turpitude, had entered the United States for immoral purposes, and was at that time likely to become a public charge. In the second deportation proceedings, the evidence considered in the first proceeding was not introduced, and there was nothing in the record to show that the Secretary of Labor's order of deportation was based on such evi-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dence; the order reciting that it was based on the evidence taken at the second hearing. On petition for habeas corpus, the evidence at the first hearing was put into the record, and the woman was asked if her testimony on such proceeding, which also involved the matters in issue in the second proceeding, were true. This she answered in the affirmative. *Held* that, though in the second proceeding an alias given the woman was the name of the man with whom she was charged in the first proceeding with intending to assume immoral relations, there was nothing to show that the Secretary of Labor intended to base his order on such evidence; it appearing that the second proceeding was instituted when the immigration authorities discovered that the woman had not been frank about her marital relations.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊕══54.]

6. ALIENS ⊕══54—DEPORTATION PROCEEDINGS—TESTIMONY.

In such case the evidence heard at the first proceeding was not made part of the record, so that it could be considered against the woman in the second proceeding.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊕══54.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Application by Clara Bramley Greenwood and son, Norman Greenwood, for a writ of habeas corpus against G. Oliver Frick, United States Immigrant Inspector, and others. From an order discharging the writ, petitioners appeal. Order reversed, and discharge of petitioners directed.

Mr. and Mrs. Greenwood and their son, then 2 years old, came from England to the United States in 1908. They remained here (except for one short visit to England) until April, 1914. In that month the mother and son went to England, and on their return, in May, 1914, they were held for examination before being allowed to enter at New York, being held as persons likely to become public charges and suspected of entering for immoral purposes. By proofs before a board of special inquiry it developed that Mr. and Mrs. Greenwood had been living more or less apart; that Mr. Greenwood had contributed to the support of the son, but Mrs. Greenwood had been supporting herself for some time, receiving a fair salary as a clerk; that complaints had arisen regarding her relations with one Cuthbert; and that, in the course of avoiding these complaints, Cuthbert had paid the expense of her visit abroad. The proofs also had some tendency to show that her return to the United States was for the purpose of assuming, if not resuming, immoral relations with Cuthbert—though this was firmly denied. The board found that Mrs. Greenwood and her son were likely to become public charges, because she was handicapped by the child, and because she had not sufficiently proved either the existence of her husband or his willingness or ability to support them. No finding was made re Cuthbert. The board ordered the aliens to be excluded and deported.

The subsequent proceedings do not clearly appear, but it seems to be taken for granted by all that, before the deportation, Mr. Greenwood appeared and promised to provide for their support as far as necessary, and that, upon an appeal and this additional showing, the Secretary of Labor, later in May, set aside the order of exclusion and deportation and directed that they be allowed to enter. There have been no direct proceedings for the vacation or annulment of this order of the Secretary. Mr. and Mrs. Greenwood went to live at Detroit. They remained together for a short time and then separated on account of the uncertain nature of their relationship. This had commenced in England, in 1905, in a common-law marriage, which was appar-

⊕══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ently valid, provided that Mrs. Greenwood's former husband, one Griffin, to whom she had been duly married in 1903, was not living in 1905. Apparently in view of the imminent disclosure of these facts, it was agreed at Detroit that they should separate; that Mrs. Greenwood should acquire a residence and procure a divorce from Griffin, and then that she and Greenwood should be regularly married. Thereafter Greenwood, a rather peripatetic theatrical man, continued to contribute to the son's support, and Mrs. Greenwood found remunerative employment at Detroit, and maintained a comfortable and respectable home for herself and son. Evidence as to her then good conduct and ability to provide well for herself and child was undisputed.

On October 1, 1914, the Secretary of Labor issued a warrant for the arrest of Mrs. Greenwood, requiring her to show cause why she should not be deported because she (a) "has been convicted of, or admits having committed, a crime or other misdemeanor involving moral turpitude prior to her entry into the United States"; (b) "entered the United States for an immoral purpose"; (c) "was, at the time of her entry, a person likely to become a public charge." The warrant also required the arrest of the boy as a person "likely to become a public charge at the time of his entry." A hearing was held at Detroit before Immigrant Inspector Short, consisting of, first, an oral examination of Mrs. Greenwood, without counsel; and, second, her further testimony in the presence of counsel and the affidavits of those acquainted with her at Detroit. Inspector Short reported: "I find the alien is working in a very good place, is living in a very respectable neighborhood, has her rooms nicely furnished, and everybody who has known her since coming to Detroit speaks of her highly, both of her industry and character. She is apparently living a very respectable life." On November 23d the Secretary of Labor issued his warrant of deportation, reciting and finding: "Whereas, from proofs submitted to me after due hearing before Immigrant Inspector John J. Short, held at Detroit, Michigan, I have become satisfied that the aliens, Clara Bramley Griffin, alias Greenwood, alias Cuthbert, and son Norman, * * * have been found in the United States in violation of the act of Congress, * * * to wit, that the said Clara Bramley Griffin, alias Greenwood, alias Cuthbert, admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to her entry into the United States, that she entered the United States for an immoral purpose, and that she was, at the time of her entry, a person likely to become a public charge, and that her son Norman was a person likely to become a public charge," etc.

Thereupon she and her son procured from the court below a writ of habeas corpus, in return to which Mr. Frick, immigrant inspector in charge, justified their detention by setting up those proceedings above recited which commenced with the warrant of deportation October 2, 1914. This recital stated that after their arrest the respondents were "given a full and complete hearing" at Detroit, and that thereafter "a finding upon the evidence taken in said cause by John J. Short, immigration inspector in charge of said hearing, recommended the deportation of said aliens, and thereafter a further finding upon the aforesaid evidence submitted to the Acting Secretary of Labor, Hon. J. P. Densmore, was had, by which said finding" Mrs. Greenwood was adjudged to be a member of the excluded class upon grounds (a), (b) and (c), and the son was adjudged likely to become a public charge at the time of his entry. Neither the warrant of arrest, the warrant of deportation, the petition for the writ of habeas corpus, or the return thereto made any reference to the May proceedings, except that the petition said that upon the entry of the petitioners they "were detained at Ellis Island for a period of about 10 days, at said landing, in May, 1914, but after a hearing before a board of special inquiry, your petitioners were allowed to proceed to Detroit, Michigan, in May, 1914." The petition alleged that at the hearing at Detroit no evidence whatever was introduced tending to support the charges in the warrant. Upon this record the matter came on for hearing before the District Judge, and was argued and submitted. Thereafter, and after a substitution of attorneys for petitioners, they filed an amendment to the petition to which they attached a copy of the testimony and affidavits put in before Inspector

Short, at Detroit, and a copy of the testimony taken before the board, at New York, in May, and which amendment said "that the attached testimony, papers, and exhibits contains all the testimony taken before the Commissioner of Immigration, inspectors of immigration and the Acting Secretary of Labor of the United States upon which the warrant and order for deportation is based." After further hearing before the District Judge, he discharged the writ and remanded the petitioners; and they bring this appeal.

F. C. Sibley, of Detroit, Mich., for appellants.

J. E. Bland, Ass't. U. S. Atty., of Detroit, Mich., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The son has always been properly supported by his parents; but if his mother is deported, there is sufficient uncertainty of continuing support by the father alone to justify the finding that the son was, at his entry, likely to become a public charge. It follows that his right to remain in this country must depend upon his mother's similar right; if she is deported, he should be.

[2] 2. There is nothing whatever to support finding (a). It is not suggested, in the evidence, that she has ever been convicted of any offense. The finding that she has admitted committing an offense involving moral turpitude can refer to nothing except to her relations with Greenwood. Instead of admitting an offense, she has constantly insisted that, when she entered into the common-law marriage with Greenwood, Griffin had disappeared, and had been gone for more than 2 years, and that she believed he was dead. Her belief has now been confirmed by the lapse of 11 years, during which she has not been able to learn of Griffin's existence. Lacking proof that the first husband was living at the time of the marriage to the second, it cannot be said that she was guilty of bigamy; nor, in the presence of her belief that Griffin was dead, can it be said that her conduct involved moral turpitude.[1] Support for the deportation must be found elsewhere than in ground (a).

[3] 3. There is nothing to support the finding that she was directly liable to become a public charge. For some time before her departure in April, 1914, she had successfully supported herself in this country. There was no reason to suspect that she could not continue to do so. After her re-entry, she had no difficulty in finding remunerative work. The conclusion that she was likely to become a public charge is merely arbitrary—unless her entry was for an immoral purpose, thereby making her subject to possible prosecution and imprisonment at public expense or naturally tending to a life not supported by honest work, in either of which events there would be a basis for concluding that she was likely to become a public charge. Lam Fung Yen v. Frick, 233

---

[1] NOTE.—See Vreeland v. Vreeland, 78 N. J. Eq. 256, 79 Atl. 336, reviewing English cases; and see also cases cited in note in 34 L. R. A. (N. S.) 940. It seems well established that the presumption of the legality of a marriage and the legitimacy of children merges and destroys the presumption that a former spouse had continued alive; and that the second marriage was not ceremonial would not seem to affect the reason of the rule. At any rate, in 1910, a presumption of law had arisen that Griffin was dead.

Fed. 393, —— C. C. A. —— (C. C. A. 6, June 16, 1916). It follows that if her entry was of this character, the proofs did tend to support charge (c); otherwise, not; and so charge (c) merges in charge (b).

[4-8] 4. It was clearly the substantial theory of the deportation proceedings upon charge (b) that since she was not the lawful wife of Greenwood and since she had been allowed to enter for the purpose of living with him as his wife, her entry was for an immoral purpose. The proofs taken at Detroit were directed (except as hereafter stated) to this issue, and we think this is the substantial ground upon which the Secretary of Labor was intending to act when he ordered deportation. As we have seen that there was no evidence even tending to show that she was not Greenwood's lawful wife, but that the tendency of all the evidence is to the contrary, charge (b) is without support and the deportation cannot rest upon it—except upon the one theory now to be considered and which presents, to our minds, the only close question in the case.

The May New York proofs probably had enough tendency to indicate an entry for the purpose of immoral relations with Cuthbert to furnish legal support for an order by the Secretary to deport her upon that ground. The proofs at Detroit, considered separately, had no such tendency (re Cuthbert). The order of admission made in May, although necessarily involving the finding that she was not entering for this purpose, was not such an adjudication as to bar the Secretary's subsequent inconsistent action (Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029); and the Secretary had the lawful right to base his deportation order of October upon the charges re Cuthbert, as disclosed in the New York testimony of May, provided the New York testimony was properly brought into the deportation proceedings. The decisive questions, therefore, are two, and the answer to each bears upon the other: (1) Did the Secretary really intend this finding (b) to rest upon the Cuthbert affair? (2) If so, did the New York testimony so far come into the record in the deportation case as to justify the Secretary in acting thereon?

We have already indicated what we think the right answer to the first question. The deportation warrant and order made no reference to the May proceedings; they made no identifiable reference to the Cuthbert matter; of course, charge (b) and finding (b) must refer to something, but this reference is sufficiently satisfied by petitioner's relations to Greenwood; the reasonable inference from the whole record is that the immigration officials had learned that she had not been frank with them regarding her marriage to Greenwood, and that this marriage was not regular and that they proposed to deport her upon that ground and for that reason. They charged this ground directly as the first accusation, charge (a); and charges (b) and (c) were incidental thereto. The Secretary of Labor had considered the Cuthbert affair in May; he had thought it not sufficient to justify exclusion; nothing had intervened tending to persuade him to change his mind; and we think it strongly to be presumed that he did not intend, in October, to order Mrs. Greenwood deported for the same reason and upon the same proofs which in May he had held insufficient to exclude her. We could be satisfied to find such an intent by the Sec-

retary only if the record made that intent necessary to support his finding; but, as we have seen, upon his theory of the Greenwood matter his finding (b) was amply supported otherwise. In addition to this natural inference, we find that the warrant of deportation is expressly declared to rest upon "proofs submitted to me after due hearing * * * held at Detroit." While this language does not necessarily exclude the existence of other supporting proofs, it seems to do so. That there had been any other hearing except at Detroit would not be supposed by the reader of this warrant; but, if there is ambiguity in the warrant, there is none in the government's answer, by Inspector Frick, which again declares that the finding of the Secretary was made "upon the aforesaid evidence" (that taken at Detroit); and the answer of the inspector summarizes and concludes by again stating that the process upon which petitioners are detained "is based upon hearing in said cause." This must mean the same hearing before referred to, the only one mentioned, and the only hearing there had been "in said cause," viz., in the deportation proceedings.

As to the second question: The New York testimony was in fact never offered in evidence in the deportation proceeding; Mrs. Greenwood never was notified that it was to be used against her or that it was to become a part of the deportation record; and, obviously, unless she was chargeable with notice that it was to be used against her, it formed no part of the "hearing." The atmosphere of the case lends support to the idea that the new proceeding was intended by everybody to be distinct; the old proceeding was ended; it was not charged that she had procured her entry by fraud, nor was she otherwise notified that it was proposed to review or reverse the former finding upon the old record. So far as Cuthbert was concerned, no new facts had come to light; and there apparently was no reason why the government should wish, or why she should suppose that the government wished, to review or change its conclusion that the Cuthbert affair did not call for her exclusion. She knew that the case made against her on admission upon this ground had been held insufficient; she knew that the proof for deportation after admission ought to be stronger than the proof for nonadmission; she knew that there was no direct reason why the government should change its position about the Cuthbert affair; and she knew, after the proofs were closed, that the government had made no claim that its conclusion re Cuthbert had been erroneous. On the other hand, it had been newly discovered that the existence of any valid marriage to Greenwood was challenged. This subject-matter was brought new into the warrant, the Detroit testimony was directed mainly to this new subject, and we think she and her counsel were justified in regarding it and its appurtenant (b) and (c) as presenting the only issue made by the record.

There is a possible inference that the new warrant intended to renew the charge re Cuthbert, from the fact that she is named therein as "alias Cuthbert"; but this inference is remote and is not clear enough to justify disregarding the natural theory of the whole situation. This reference to her is meaningless, unless for an implication wholly unjustified. If it should be taken as implying a charge that she had assumed Cuthbert's name—which would amount to having

lived openly as Cuthbert's mistress—it was a charge which could have been suggested only through reckless indifference.

Against the conclusions that the deportation warrant was not intended to rest on the old charge and proofs in re Cuthbert, and that the old proofs were not considered as being in the deportation record, are three things: First, that at the Detroit examination she was asked if her former testimony was true; second, that she put the old testimony into the habeas corpus record; and, third, that in the new testimony she was asked questions concerning Cuthbert. As to the first: Her former testimony related also to her relations with Greenwood— the precise subject of the new charge. It was therefore natural to ask her if her former testimony was true; but the questions developed nothing; her old testimony neither adds to nor detracts from her new testimony re Greenwood.

As to the second: The reason why she did this is not apparent; perhaps counsel thought it might be necessary. So doing in the habeas corpus proceeding is not inconsistent with the idea that they were trying in the deportation proceeding only the new charge, since the old testimony related to that also; but the more natural thought is that counsel took this course without any deliberate thought or purpose, or out of abundant caution. Their statement in the amended petition that the copies attached constitute "all the testimony * * * upon which the order for deportation is based" should not fairly be held to mean more than they comprised everything upon which it could be claimed that the order was based.

As to the third: The questions asked at Detroit re Cuthbert did not bring out anything even giving a different color to that matter; and so would not naturally lead to a belief that there was any thought of revising the decision re Cuthbert.

Upon the whole, we conclude that the New York proofs were neither properly brought into the deportation hearing, nor did the Secretary intend to rely upon them, and that the order cannot stand on the Cuthbert charge. Other objections to the order do not require notice.

The order of the District Court is reversed, without costs, and the case remanded, with instructions that petitioners be discharged from custody. The government asks for no further hearing before the Secretary.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes