# Young *v.* Sweigart, Appellant.

*Evidence—Presumption—Death—Illegitimates.*

When any given status be once established, its continued existence is presumed until there be some proof or contrary presumption that would warrant the conclusion it has ceased or been changed.

Where a man has unexpectedly and without apparent reason left his home, his family, and has not been heard of for a period of seven years, his death will be presumed. But it is equally clear that the presumption of life will continue in full force until the whole period of seven years has elapsed.

Where an illegitimate son is shown to be alive in 1875, and his mother dies intestate as to real estate in 1880, and there is no evidence whatever to show when the son died, it will be presumed that he was alive in 1880, and he will take, as of that date, her real estate under the intestate laws.

*Adverse possession—Evidence—Real estate—Illegitimates.*

Where the widow of an illegitimate son lives with her mother-in-law, in a house owned by the latter, and after the mother-in-law's

death, shares it for several years with a child who was one of the heirs at law of the mother-in-law, the widow, in the absence of evidence of ouster of the mother-in-law, cannot claim title to the house by adverse possession.

Argued Nov. 13, 1917. Appeal, No. 316, Oct. T., 1917, by defendant, from judgment of C. P. Lancaster Co., Sept. T., 1916, No. 50, on verdict for plaintiff in case of James Edward Young et al. v. Frank B. Sweigart. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Ejectment for lot in Borough of Elizabethtown. Before LANDIS, P. J.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*B. F. Davis,* for appellant, cited as to adverse possession: Pipher v. Lodge, 16 S. & R. 214; Watson v. Gregg, 10 Watts 289; Stull v. Stull, 197 Pa. 243; Sailor v. Hertzogg, 10 Pa. 296.

*T. Roberts Appel,* for appellees, cited as to adverse possession: Johns v. Johns, 244 Pa. 48; Long v. Mast, 11 Pa. 189; Crist v. Boust, 26 Pa. Superior Ct. 543; Com. v. Bierly, 37 Pa. Superior Ct. 496; Williams v. Milligan, 183 Pa. 386.

OPINION BY HEAD, J., July 10, 1918:

The action was ejectment. The learned trial judge directed a verdict for the plaintiffs upon which judgment was thereafter entered and the defendant appeals. The facts, although unusual, appear to be without dispute. A brief statement of them will readily disclose the first of the two controlling propositions upon which the appellant relies.

(1) It is agreed one Catharine Shaeffer was the owner in fee of the premises which are the subject of this litigation. She died in 1880 intestate as to this real estate and her title and estate necessarily then descended to her next of kin entitled under the law to inherit from her. Although never married, she became the mother of three sons, each one having a different father. Two of these sons died in her lifetime. The appellant is the son of one of these two. As to the two children who died in her lifetime, it must be clear they left behind them nothing that would tie their children to the real property owned by their grandmother. So much is surely settled in Steckel's App., 64 Pa. 493; Woltemate's App., 86 Pa. 219. Her third son was Gabriel Young. It is clear and undisputed that as late as 1875 he lived in Elizabethtown, Pa., with his wife and two children, the latter being the present plaintiffs. The record is absolutely barren of evidence that would tend to prove either that he was actually alive or actually dead in 1880 when his mother died. At the moment of her death the law cast upon her heir, if there were one living and competent to inherit from her, the property in question. Was her son Gabriel Young alive at the time of her death? If he was, he undoubtedly was her heir at law under the beneficent provisions of the Act of 1855 and took to himself an estate in fee in the property that had been hers. As we have said, the record discloses no evidence to enable any tribunal to determine the fact whether or not he was alive or dead at the time of the death of his mother. We are therefore compelled to resort to those presumptions of law, the necessity for which was well stated by GIBSON, C. J., in Burr v. Sim, 4 Wharton 150. These presumptions, founded, as they are, upon the common experience of men, have stood the test of time and justified the necessity for their existence.

It is a well settled principle of evidence that when any given status be once established, its continued existence is presumed until there be some proof or contrary pre-

sumption that would warrant the conclusion it has ceased or been changed. It is familiar to the profession that where a man has unexpectedly and without apparent reason left his home, his family, and has not been heard of for a period of seven years, his death will be presumed. But it is equally clear that the presumption of life will continue in full force until the whole period of seven years has elapsed. So it was said in a careful opinion by Judge ORLADY in Jaskalski v. Penna. Slovak Roman & Greek Catholic Union, 64 Pa. Superior Ct. 535 : "In Esterly's App., 109 Pa. 222, the Supreme Court said : 'The rule is now well settled for most judicial purposes, that the presumption of life with respect to persons of whom no account can be given, ends at the expiration of seven years from the time they were last known to be living,' and this rule has been applied in McCausland's Est., 213 Pa. 189; Freeman's Est., 227 Pa. 154," and other cases cited. In Freeman's Est., supra, it is said, in the opinion of Mr. Justice MOSCHZISKER : "The rule is, where a person leaves his home and place of residence for temporary purposes, and is not seen, heard of, or known to be living for the term of seven years thereafter, at the end of that time he is presumed to be dead."

Gabriel Young therefore, the third child of Catherine Shaeffer, was living, so far as this record shows, at the time of his mother's death, and being then alive he was competent to inherit and did inherit her title to the real property of which she died seized. On this branch of the case therefore the learned trial judge was clearly right in directing a verdict for the plaintiffs who were the children of said Gabriel Young.

(2) The next line of defense—indeed what appeared to be the main one on the trial—was that Mollie Sweigart, the mother of the defendant and the widow of one of the sons of Catharine, had acquired title to the premises in dispute by adverse possession during a period of more than twenty-one years. The learned trial judge, in his elaborate and careful opinion refusing a new trial, points

525, (1918).] Opinion of the Court.

out that in the beginning the possession of this person was not only not adverse to the title of Catharine but altogether in harmony with it. She took up her abode in this property during the lifetime of her husband's mother; she shared it with one or both of the children who are the present plaintiffs. Her alleged possession, being such in its origin and inception, could not be converted into an adverse and hostile possession upon which she could build a claim of title without some open and notorious act that would be the equivalent in law of an ouster of those claiming under Catharine. The learned judge below we believe was entirely correct in holding that the record disclosed no evidence which would warrant a jury in finding there had been such an act of ouster long enough before the impetration of the writ to support the conclusion she had acquired title by adverse possession. The assignments of error are overruled.

Judgment affirmed.